I may please the court, Manuel Serpa on behalf of appellant Shirley Klahn. Please allow me to reserve two minutes for rebuttal. Certainly. Thank you. The evidence is overwhelming in this case that Ms. Klahn is not capable of performing the standing and walking requirements of light work, six hours of an eight-hour workday. The video really hurts your case. Bizarrely. In fact, in what I think is a strikingly dubious use of resources, the administration had Ms. Klahn, a 58-year-old former licensed practical nurse with a long and consistent work history, surveilled and observed on one occasion driving to and from her church where her husband is the pastor and walking to and from the church from her car. None of those are true. There is an allegation that she cannot stand and walk for significant periods of time, that she could not stand and walk, more importantly, for six hours. One thing that probably impressed the ALJ and it certainly impressed the investigator was she was obviously using her brake and accelerator, and her testimony was that she just had to keep it on cruise control because she couldn't because her feet hurt so much. She said that at a certain speed she got this new car and cruise control assists her. She never said she couldn't drive. If she couldn't use the brake, she couldn't drive, or I should say she couldn't stop driving unless she ran out of gas. But that's the level of absurdity, I think, to take these observations to diminish her credibility, the credibility of her own board certified physical rehabilitation medicine specialist and her own testimony, that because she drove to her church and uses the brake, even though she never said she can't drive. I wasn't the only thing. There were also doctor's observations that she seemed to get on the examining table and walk around in the doctor's office okay. That was not cited by the judge, Your Honor, and nor is it inconsistent. She didn't say that she couldn't walk. Or let me make it clear. The she is disabled under the medical vocational guidelines if she cannot stand and walk six hours of an eight-hour work day, 40 hours a week on an ongoing basis. She consistently testified that her symptoms increased and decreased when she prolongs her standing and walking, not just from doing it or that she's incapable of doing it. She never said that. And that was clarified at the hearing. And she was even asked at the hearing by the judge about this video. And she said, yes, I go to Bible study there. I carry my Bible in my purse and maybe some folders. None of this is inconsistent. I think, yes, can I, you should spend most of your time talking about this, but let me just ask you about Lounsbury. Is your position if we were to follow that case, none of what you've just been talking about matters at all here? Correct, Your Honor. Okay. So how is it that we're just being presented with this now? Yeah, I agree. And why should we actually look at the case now? Obviously the government doesn't want us to. Yes, they brought it up in their brief, but failed to disclose that it's dispositive. They described it as a technical issue, but I would say it's only technical in that it requires no further analysis. And based upon the ALJ's findings alone, she's disabled. However, it is true, this is a very rare factual profile. There's a reason why you don't see reference to it. I'm still missing something. On the question I asked you before relates to it. The only thing she's really restricted from doing, because for bad feet, is standing and walking for extended periods. And the folks, the judge, the ALJ thought she was exaggerating just how limited she was, but regardless, the vocational expert said she could be a phlebotomist that's somebody who draws blood. And they don't stand and walk for six hours out of an eight-hour work day. They mostly sit. The job is characterized as a light position. There's no evidence that it is not done in the light manner, standing and walking six of eight hours. In fact, the phlebotomist is a light job according to the dictionary of occupational titles, and the main distinction of light work is the standing and walking requirement of six of eight hours a day. There's no evidence that a phlebotomist is done in any way less than six of eight. And in fact, and this goes to your point as well, the vocational expert was specifically asked, is this the only job she's used to? For that, everybody knows what a phlebotomist does and how they do it. The commissioner --"The problem with being a nurse is you're going up and down those long hospital corridors all the time." The commissioner's job is to accept what the DOT says the job is. The DOT says a phlebotomist is light. No one in this record has said otherwise. They would have to find very persuasive evidence to the contrary to find that it didn't. And light, you're saying, is classified as something where you have to walk six or eight hours a day? Absolutely, Your Honor. Can you just finish the sentence you were about to, and give the record site you were going to give for the vocational expert's testimony on that point? Right. It's at AR-75. Well, okay. He specifically said, we would test. Is that, that's not the testimony, though, is it? Yes. I thought that was the, okay. I'm almost, well, oh, I'm sorry. I thought, I meant the actual testimony, because you were saying the vocational expert specifically testified this is the, and then you got cut off. You were going to say the only job out there that she could do. Yes. I assume, right? Yeah. The ALJ asked to confirm that. This is it, right? Transferable skills only to this job? Okay. And he said, yes. Okay. That's at AR-75? Correct. Got it. Okay. Under Lounsbury, individual advanced age, light work, light RFC, incapable or past work, which is this case, has to be, has to, for the commissioner to deny them, they have to show transferable skills to a significant range of work, meaning significant number, range of occupations. So one job occupation title is not enough. That's the exact situation. I think there's no coincidence that both Lounsbury and Ms. Klon are lesser skilled versions of nurses. She's not a nurse in the sense that we normally think of as a nurse. So these positions give them some skill, but not the additional level of medical expertise that would allow them to perform sedentary type jobs and have transferable skills to sedentary type jobs. That's why this case, I think, was not brought up. Even though I've been doing this for 17 years and have represented thousands of claimants, I've seen maybe a handful where a light RFC only allows for transferable skills to one job, because usually they have additional skills that allow them to do a range of sedentary work as well. Was there any, did she testify as to why she doesn't take aspirin or ibuprofen or acetaminophen or any of the non-prescription, non-steroidal anti-inflammatories for her pain? She does, is prescribed medication that she takes. I remember the doctors and the ALJ thought that she, that that was one of the reasons she was exaggerating her pain. The ALJ mentioned the conservative nature of her treatment. She didn't mention that specifically. But this also falls under Social Security ruling 96.7.5.P. When talking about levels of treatment, you have to take into consideration, well, is the individual minimizing their activity to the extent that it can help control their symptoms? And it's that minimization of activity that helps them keep it under control, in addition to the medications prescribed by the doctor. And she has made it very clear. She didn't answer my question at all. I asked you if she had testified as to why she does not take any of those non-steroidal anti-inflammatory drugs to reduce her pain. Not only was she not asked, she didn't testify to it, but she was never asked. And it was not considered a significant issue by the judge nor any of her physicians. Did you ask her? I did not represent her here. Whoever represented her. I don't believe she was asked that specific question, Your Honor. But I think the evidence was in the record that she didn't. She was following her doctor's orders. She was under the care of a pain management specialist. Was there a doctor's note noting that she did not take any of those pain medications? She took what she was prescribed. I know that. But remember, this woman had had surgery. You can go to Walgreens and buy those without a prescription. I would have to double-check to see. I don't recall this being an issue, but I don't think it detracts from her credibility at all, nor was it really addressed by the ALJ as a detracting factor. Remember, her surgeon, who did the surgeries, followed up with injections and therapy, referred her to a pain management specialist for palliative care, made it very clear that she was always going to have pain. It was always going to disrupt her function to some extent. She was going to be permanently impaired by this, regardless of what they did. And so she properly followed up with her pain management specialist to the best of her ability and minimized her activity such that she was not standing and walking six of eight hours a day. Remember, she tried to do an additional job that was a little bit more modified at the prison and then couldn't do that. She could not do the standing and walking required. You know, I know I'm missing something here. I've never seen a disability case where somebody got disability because they couldn't stand and walk six or eight hours a day. And the reason why I don't recall one is that most jobs don't involve standing and walking six or eight hours a day. Most jobs involve being there and sitting. I'm missing here. The medical vocational guidelines take into consideration someone's age, education, their past work, their skill level, and their ability to make the vocational adjustment. Once they've shown they can't do that past work, to do other work. The medical vocational guidelines direct disability, even though an individual can do every sedentary job that exists. Here there was a phlebotomist. Which was light, not sedentary. And the judge... Oh, I get it. Okay. Right. Okay. Thank you. But in response to your concern about Lonsbury, it is an extraordinarily rare set of facts. And I think that's why you don't see the Lonsbury case cited very often, if you look it up. It's very rare that someone at light doesn't also have transferable skills to sedentary work. But it is the case where they have just enough skill to make a little bit of vocational adjustment. I was just going to suggest maybe you should save your time for rebuttal so you can respond. Because I know the government is going to say we should not rely on Lonsbury. And I'm sure you're going to want to have a chance to respond to that. Thank you. Thank you. May it please the court, your honors. My name is Alexis Ray. I represent the government in this matter. On the Lonsbury issue, I mean, our first argument and foremost is that we feel very strongly that that argument is waived. It wasn't raised at the district court. And it wasn't raised in any of his briefs to this court. And the proceedings below would have looked differently? It would have been different if it had been raised? I don't know that I can say that for certain, your honor. Actually, I can honestly say I wasn't familiar with the holding of Lonsbury until counsel brought it to my attention this week. Do you agree that if we were to follow the case here that she would prevail? I mean, I think the facts seem pretty similar. I'm not in a position, given the late hour at which it was raised, to say for sure how the agency would do that. I would have to consult with my client. The facts do seem pretty similar. Without doing further investigation, I can't say for sure. Okay. Well, maybe just give me a sense then of how was the agency prejudiced by this not being in play earlier? I mean, I think just what I just said. I mean, counsel called me on Monday of this week. I felt it was important to focus on the merits of the claims that were raised. And another thing, you know, if we indeed did look at a case similar to this in the context of deciding, you know, is this case applicable? What should we do? Should we send it back? That's something I have to consult with my client about. I have to consult. Let me make sure, because I'm not understanding the complexity of the analysis at all. I look at that case. I looked at the whatever that grid thing is and the regs, right? And then you just need to know what the underlying facts are. And it doesn't seem like there's any dispute about what the underlying facts are in this case. And when you take those and you apply the rationale of Lounsbury, it seems like it's clear she would have to be deemed disabled. I mean, I would agree with you that it seems that way. There may be some technical issue that I would need to consult with my client about. Well, you've had an opportunity to file an opposition to the 20HA letter. You're here. I had a few days. I'm ready to listen, but you have nothing. I focused my preparation on the merits of the claims that were raised. I did look at the case after counsel consulted me on Monday. It usually takes – You cited it in the brief, isn't it? I did cite it in the brief for a different – I mean, I think I cited the case for this is the sequential evaluation process. I had no reason to look at the case further for an issue that wasn't raised. You didn't read the whole – I did not, Your Honor. No kidding. It was a very general proposition. This is the sequential evaluation process. It just seems odd for the government to stand here and say, well, we were aware of the case. You might not have read it, but certainly you were aware of it. It seems to be on all fours with this. It seems to dictate a result opposite to the one reached below. And yet you say, but please just put that out of your mind and let's just deny her relief. That just seems like an odd position for you to take. I mean, under the well-established principles of waiver, this is why – That's not a waiver at all. You can waive theories. You can waive arguments. But you don't waive application of a particular statute or regulation or decision. We're bound to apply our own law, regardless of whether it was argued enough so that opposing counsel to whoever is arguing it picked up on it. I mean, it's our position that, you know, we are bound to reply to the issues that were raised. We're under no obligation to search every ALJ decision for a possible error. What do you mean by issue in that context? I thought they did raise the issue that at her age, she doesn't have to learn something new. It has to be something related to the kind of work she used to do. I mean, in the briefs, counsel's arguments were focused on the credibility analysis and the medical opinions. I don't recall anywhere in the brief for anything with regard to any Step 5 vocational transferable skills issue until the 28J letter. The arguments were all focused on residual functional capacity assessment. No, you're right. You're absolutely right. I don't even think counsel is going to – opposing counsel is going to get up here and dispute that. He admitted, I think, he overlooked this because it just doesn't come up that often, as many years as he's been doing this. And I would agree that it doesn't come up. Right. But I'm just trying to figure out, okay, so everybody overlooked it. But if the law is clear as day that she should be deemed disabled, I just don't understand. What's the unfairness, what's the prejudice to your side in us not applying law that everybody conceives is on the books? I would just say that given the late hour, I haven't even had time to confer with my client on what their position would be, what their view of this case is. I did find out in my short time that there is some kind of an en banc brief pending on this issue or at least has some relevance to Lounsbury. I don't know specifically what that is. So, I mean, I think there are some issues that we would need to look at. What's that case? I know the name is Lebleu or something to that end. What did you say, Liz? Lebleu? Lebleu, I think. Lebleu, okay. I don't know much about it other than it definitely implicates Lounsbury. Okay. Discussing the merits, if I may. When you say pending, you mean somebody filed a petition for rehearing in the case? I believe an appellant filed a petition for en banc. Has an order come down saying we're going to rehear the case en banc? I'm not even sure the government has responded. I haven't had a chance to really look into it. I just know that somehow Lounsbury is implicated and there's something pending. Reaching the merits of the case and specifically the Office of the Inspector General investigation, I would turn you to the claimant's functional report that she submitted early in the application process with regard to her application for benefits. And it says things like she can't even stand long enough to prepare a meal. It says that she has pain with any walking or standing. She presents with a limp when she goes to the agency's consultative examination. And so I think that the things that are in that OIG investigation report actually are inconsistent with her statements. She says she needs to use cruise control. She's driving at varying but excessive speeds using the brake. That is inconsistent with her claim. And the fact that she's walking down steps without a handrail, walking without difficulty, we're not saying that that, you know, it's inconsistent with what she was claiming at the time of her application. And so that is a reason to discredit her credibility. I think the investigator observed that she was walking down steps, didn't have any... No handrail, no difficulty walking at any point in time. And just doing things that she said she couldn't do at the time. And so that's, you can use traditional methods of credibility evaluation when you're looking at the claimant's testimony and discard those. And I think the OIG... I guess the argument about waiver is if we look at the issues presented for review, they're insufficient weight to the treating and examining physicians, controlling weight to a non-examining physician, and finding of lack of credibility. And that's all. Nothing about transferable skills for... That is our position, Your Honor. And with regard to light work, I don't have the regulations so I can't quote it, but I'm pretty sure it says that light work requires up to six hours, you know, it's frequent, so up to two and a third hour or six hours of standing. It could also be light because of the lifting requirements. It could be light because it's, you know, lifting up to 20 pounds instead of up to, you know, up to 10 pounds for sedentary work. So I don't think that there's necessarily evidence showing that it would require the complete six hours of standing. It's up to six hours of standing. But given the OIG investigation, the other reasons the ALJ cited for discounting her credibility, and perhaps most importantly, the complete lack of objective evidence to support limitations of the degree she alleged. The ALJ, actually no one in this case is saying that she doesn't have some foot pain, but what the ALJ did in his evaluation is explain her reasons for finding that was not so severe as to preclude her from doing this limited range of work. Do Your Honors have further questions? Just one other question. Let's say that we weren't persuaded by your waiver argument on the Lounsbury point. Is there some mechanism that you would say, well, at the very least don't do what the court did in Lounsbury and send it back with her basically being declared disabled and just, you know, have an award of benefits? Is there some opportunity that you, your client wants if we were to think that Lounsbury was in play to send it back? So there could be, I don't know, I don't know what would happen. So there is a mechanism by which I can consult with my client and if they agree that there is a problem with the case that they could take it back on their own and, you know, send it back for a new hearing or a new decision or pay her. I mean, those are all options I would need. Usually that takes at least a week for me to do that. I just meant in our disposition. If we were, I have no idea how my colleagues come out on this issue, but I'm just saying if we weren't persuaded by your waiver argument, Lounsbury would suggest that our disposition should be a remand basically for an award of benefits. You know, she would be deemed disabled as a matter of law. I'm just saying, is there some opportunity that you think the agency should be given to, I guess, explore further these issues? I would like the opportunity to confer with my client and her health. No, no, no, that's a different question, I think. If I understand Judge Watford correctly, if we decide that there's no waiver of that issue in this case, is there an option beyond just sending it back and ordering that she be found disabled? Is there the option, for example, to send it back on a remand for the ALJ to evaluate it in the first instance? Yes, Your Honor. You could remand it for further administrative proceedings. She could have a new hearing. We could look at this again. Are you asking us to do that if we don't accept the waiver argument? I'm just trying to get a sense of where you're coming from. You say that, well, geez, Lounsbury seems to control if you apply it. I'm just saying, is there something that we're missing where you say, well, but if you don't accept my waiver argument, at least send it back, you know, kind of so that there could be some further... I mean, I think a remand for further administrative proceedings would solve all of the problems, even the problems that... It would solve your problems, but why are you entitled to one? I mean, if what you're saying is they waive the argument that her condition is not good enough for her to perform light work and phlebotomist's light work, and I think you're saying that if she didn't waive the argument, then the government loses under Lounsbury. I mean, I don't think I'm ready to concede that the government loses under Lounsbury. It looks like that could be a distinct possibility. I think we need more time to look at it before I can concede that issue. Well, of course. I mean, Lounsbury's been out there since, what, 2006?  I mean, again, it would be a mistake. I mean, it wasn't brought to my attention until Monday. No, it was in your brief. For a completely different proposition, yes, Your Honor. So what? You read a case that's in your brief. And I'm obligated to respond to the issues that were raised. I mean, it would be different if this was some case that just came down this week. So you're saying you're really not prepared to say if Lounsbury, if that issue was not waived, we lose, but only because you haven't read the rest of Lounsbury. I mean, I am familiar with the holding now. I would say I can't take that position. I can't take a position one way or another until I've had more time to research the issue,   I don't know. I don't know. I don't know. But you seem to lose under Lounsbury, assuming it's not waived. It appears to be a distinct possibility, yes, Your Honor. All right. Thank you very much. Thank you, Your Honors. Let me point out very briefly, light work is defined by the administration itself in SSR 8310. And a job is in this category when it requires a good deal of walking or standing. The primary difference between sedentary and most light jobs. Is there an in-between option, or is there just waiver, you appear to lose, not waiver, you may win, is there an in-between of remanding it for the AHA to have an opportunity to take another look at it? Because, you know, in all fairness to the government, this really was not presented in the opening briefs. There wasn't that challenge at that particular step. So it hasn't been fully briefed. You submitted a 28-J letter. It seems to fit the facts of the case. So what do you suggest we do with it, assuming that we find that there's no waiver or you can get passed it? You can't pass waiver somehow in this case. Yes. I agree with Judge Kleinfeld that you can't waive the standard of law that's being applied. The law is out there. There's lots of law out there. But if you don't present it sufficient for the other side to respond to it, that's how waiver works. I'm prepared to argue that the evidence in this case calls for remand for reversal and payment based upon the evidence as it stands despite Lounsbury. Counsel, I don't understand your argument against waiver. I gave your opposing counsel kind of a hard time because Lounsbury's been out there since 2006 and she cited it. So it was incumbent on her to read it. Well, same for you. It's been out there since 2006 and although you didn't cite it, your opposing counsel did and I imagine you read all the cases she cited as any lawyer would. And the main thing I use the issues presented for review section of the brief for is to see what issues are presented for review. And the one about how at her age she's entitled to light work only if the vocational expert can identify light work for which she has transferable skills. It's not there. It's a good argument but it's not there. You present three issues for review. Insufficient weight to the treating and examining physicians, too much weight to the non-examining state agency review physician and insufficient basis for the finding that her subjective complaints are not credible. Frankly, that's all I prepared for because that's all you said was presented for review and review is what we do. So it looks like just a straight down the middle waiver and no excuse for it because Lounsbury's not new. The reason why I would say it is not... Not a waiver of the case. That can't be done. A waiver of the theory for why we should overturn the decision. I believe that she's entitled to an application of the medical vocational guidelines and that that can't be waived. However, I acknowledge that that specific issue was not argued in our brief. Now, I think the distinction is that it is the legal standard itself and not just some random issue of a mistake that the judge may or may not have made or a calculation of credibility. This goes to... You're asking for all or nothing? Waiver or win? No remand for the parties to have another opportunity to explore it, take another look at it, have the ALJ fully flush out your issue? If Lounsbury does apply, then it's dispositive there would be no benefit. If it doesn't apply, reversal for payment of benefits is also appropriate because remember you have... Is it still good law at 8 years old? Yes. Yes, Your Honor. But it is not cited very often because it's rare. Recall, you have a treating physician, the pain management specialist, Social Security's own consultative examiner, board certified, and another examining physician all agree she can't stand 6 of 8. She wins if she can't. The only doctor who finds otherwise is a non-examining doctor who happens to be a pediatrician who mischaracterized the consultative examiner's opinion as saying she was not capable of lying. We've got your argument. All right. Thank you very much.
judges: Kleinfeld, Nguyen, Watford